COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


 NUMBERS 13-10-00016-CV and

 13-10-00023-CV

 

JUDGE CARLOS CASCOS, ET AL., Appellants,


v.


CAMERON COUNTY ATTORNEY, Appellee. 


On appeal from the 444th District Court 

of Cameron County, Texas.

 


NUMBER 13-10-00059-CV


IN RE: CAMERON COUNTY JUDGE CARLOS CASCOS, ET AL.

 


On Petition for Writ of Mandamus

 


 O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Vela

 Opinion by Chief Justice Valdez

 

 By two interlocutory appeals, appellate cause numbers 13-10-00016-CV and 13-10-00023-CV, appellants, Cameron County Judge Carlos Cascos, Cameron County
Commissioners Sofia Benavides, John Wood, David Garza, and Edna Tamayo, in their
official capacities as Cameron County Commissioners Court, and Richard Burst, Bruce
Hodge, and Dylbia Jeffries, in their official capacities as attorneys in the Cameron County
Civil Legal Division, complain about trial court orders granting appellee, Cameron County
Attorney Armando Villalobos, a temporary restraining order and a temporary injunction and
denying appellants' plea to the jurisdiction. By one issue in each interlocutory appeal,
appellants assert that the trial court abused its discretion in granting appellee a temporary
restraining order and a temporary injunction. (1) 

 Moreover, in appellate cause number 13-10-00059-CV, appellants filed a petition
for writ of mandamus and an accompanying emergency motion, arguing that the trial
court's order affirming appellee's temporary injunction is void and that appellants are
entitled to "supersede" or, in other words, suspend the enforcement of the temporary
injunction during the pendency of this matter on appeal. 

 With regard to appellants' petition for writ of mandamus in appellate cause number
13-10-00059-CV, we conditionally grant the writ requested. Furthermore, we grant
appellee's motion to dismiss appellate cause number 13-10-00016-CV. In appellate cause
number 13-10-00023-CV, we dissolve the temporary injunction, reverse the judgment of
the trial court, and remand for proceedings consistent with this opinion.


I. Background

 On December 17, 2009, appellee filed his original petition for declaratory and
injunctive relief, asserting that: (1) the Cameron County Commissioners Court improperly
transferred the Cameron County Civil Legal Division out of appellee's office; (2) by advising
and representing the Cameron County Commissioners Court, the Cameron County Civil
Legal Division usurped appellee's constitutional and statutory duties; and (3) the Cameron
County Commissioners Court does not have the authority to hire permanent legal counsel. 
On December 18, 2009, the trial court entered an ex parte order, purportedly issuing a
temporary restraining order against appellants and setting the hearing on appellee's
application for a temporary injunction for January 1, 2010. The temporary restraining order
prevented the Civil Legal Division from advising and representing the Commissioners Court
and was set to expire fourteen days from the trial court's December 18, 2009 order.

 On December 29, 2009, appellee filed a motion to extend the temporary restraining
order and to reset the hearing date on his temporary injunction request. On December 30,
2009, the trial court granted appellee's motion to extend the temporary restraining order
and reset the hearing on appellee's request for a temporary injunction to January 15, 2010. 

 On January 7, 2010, appellants responded by filing a motion to dissolve, vacate,
and rescind the trial court's December 18, 2009 ex parte order. In their motion, appellants
argued, among other things, that appellee's petition did not comply with the requirements
for ex parte relief; the relief sought is not supported by the law; appellee failed to cite any
relevant constitutional or statutory provisions that the Cameron County Civil Legal Division
usurped; and the ex parte order is legally insufficient and, therefore, void. Shortly
thereafter, appellants filed a response and trial brief in opposition to appellee's petition for
declaratory and injunctive relief, arguing that: (1) res judicata applied to this litigation,
especially in light of this Court's decision in Cameron County v. Lone Star National Bank,
107 S.W.3d 853 (Tex. App.-Corpus Christi 2003, no pet.); (2) appellee is a County
Attorney and, therefore, does not have general civil jurisdiction over County matters; (3)
declaratory relief is not available to appellee under the Uniform Declaratory Judgment Act
(the "Act"); and (4) the Cameron County Commissioners Court has the power to manage
the budget and organize County employees. Additionally, on January 8, 2010, appellants
filed a plea to the jurisdiction, special exceptions, a cross-action for damages incurred for
a wrongfully-obtained temporary restraining order, and an original answer. 

 On January 15, 2010, the trial court conducted a hearing on all pending motions. 
At this hearing, Cameron County Judge Carlos Cascos, Cameron County Clerk Joe G.
Rivera, Chief Deputy for the Cameron County Sheriff's Office Gus Reyna Jr., and appellee
testified. At the conclusion of the hearing, the trial court took the matter under advisement. 

 Subsequently, on January 19, 2010, the trial court granted appellee's motion to
enjoin appellants and denied appellants' plea to the jurisdiction. In its January 19, 2010
order, the trial court made the following findings of fact and conclusions of law:

 1. Plaintiff [appellee] has demonstrated a cause of action against
Defendants [appellants]. Plaintiff seeks the Court's determination of the
legal duties of the Cameron County Attorney with respect to the statutory
requirement of Texas Government Code Section 41.007[,] which says:


 A district or county attorney, on request, shall give to a county or
precinct official of his district or county a written opinion or written
advice relating to the official duties of that official.

 The Court finds that the remedy of declaratory judgment is available
to Plaintiff in this case. The Uniform Declaratory Judgment Act allows a
court with jurisdiction to "declare rights, status, and other legal relations"
between the parties whose relations are affected by a statute. Plaintiff asks
the Court to consider the rights of the parties under the statute cited above. 
The district court has jurisdiction over such actions pursuant to Article V,
Section 8 of the Texas Constitution and Texas Government Code Section
24.020, and therefore, Defendants' . . . plea to the jurisdiction is hereby
DENIED; 

 2. It clearly appears from specific facts shown by Plaintiff's verified
application and from the facts and arguments presented to this Court that
immediate and irreparable injury, loss, or damage will result to Plaintiff
because, unless the Cameron County Commissioners Court is enjoined from
seeking advice and representation on questions of regular county business
from permanent legal counsel outside the office of the County Attorney
without the consent of the County Attorney, Defendants will continue to

 1) usurp and unlawfully delegate the statutory duties of Plaintiff,
described in Tex. Gov't Code § 41.007, without consent;

 2) operate a permanent civil legal division without any express or
implied authority to do so; 

 3) recklessly waste county taxpayer funds on duplicate services
without reason and in a clear abuse of discretion they have on
budgetary matters; and 

 4) upset the checks and balances built into our tri-partite [sic] system
of government. 

 This injury will be irreparable unless this restraint is ordered because
the statutory duties bestowed upon Plaintiff will be usurped from Plaintiff and
will be performed by a non-elected unauthorized party in violation of a Texas
statute. Additionally[,] the Court finds, based on the evidence and
arguments presented, that taxpayer dollars used to fund the duplicative civil
division will continue to be spent in a reckless abuse of the Commissioners
Court's discretion. There was no reasonable or articulable need for the
creation of the Civil Legal Division and lacking a need for the action, the
Commissioners Court's implied powers to carry out express duties do not
justify the broad action taken under the authority of Defendant's budgetary
discretion. 

 3. The Court finds that Plaintiff is likely to prevail on the question of whether
the Cameron County Attorney has the exclusive duty to provide advice and
representation to county officials on regular county business, which includes
advising [the] Commissioners Court on proposed actions, contracts,
resolutions, and all other ordinary county business. The evidence presented
by Plaintiff at the hearing on the temporary injunction persuades this Court
that Plaintiff has a probable right to the relief sought to prevent the
Commissioners Court from hiring a permanent legal staff to advise county
officials, thus usurping the Plaintiff's duty to provide advice to county officials. 
The Court finds that [the] Commissioners Court cannot impinge on any
elected official's statutory duty, exclusive or otherwise, based on the
evidence and arguments presented and Texas judicial precedent.

 4. Plaintiff is likely to prevail on the merits on the issue of whether [the]
Commissioners Court, in creating separate, permanent legal counsel, went
beyond the scope of the constitutional or statutory authority vested in the
officers of that court based on the arguments and facts presented at the
hearing. 

 5. Unless this restraint is ordered immediately[,] Plaintiff will suffer
irreparable injury, because no other legal remedy can be obtained to prevent
the ongoing usurpation of statutory duties described herein.

 6. Plaintiff has no other adequate remedy at law since decisions of [the]
Commissioners Court are reviewable only through district court review.

 7. Plaintiff has exercised due diligence in prosecuting the underlying claim
in this cause. The Court finds, based on the evidence presented[,] including
letters from Plaintiff's predecessor dated January 30, 1997[,] and other
correspondence from Plaintiff dated February 14, 2007 (agenda request to
Commissioners Court), February 16, 2007 (letter to Commissioners
regarding restoration of Civil Legal positions and duties to Mr. Villalobos'[s]
Officer), Commissioners Court audio recording from March 6, 2007, letter of
August 20, 2009[,] addressing, among other things, the issue of restoration
of [C]ivil [L]egal to the County Attorney, and Brownsville Herald articles from
August 2009, that Plaintiff has diligently attempted to negotiate for the
restoration of the statutory duty described above.

 8. Plaintiff's injury will outweigh any injury to Defendants that may occur on
issuance of this temporary injunction. The evidence presented suggests that
the restoration of the Civil Legal positions and budget to the County
Attorney's Office will benefit [the] Commissioners Court through (1) bringing
[the] Commissioners Court actions into compliance with the statutory scheme
devised by the Texas legislature for the checks and balances between the
separate, co[-]equal branches of county government, namely [the]
Commissioners Court and the County Attorney, (2) carrying out the will of the
electorate, who chose Mr. Villalobos to execute all of the duties of the
elected Cameron County Attorney, which [the] Commissioners Court usurps
through hiring permanent outside counsel to advise commissioners and other
county officials on issues relating to regular county business, (3) allowing
[the] Commissioners Court to obtain the opinion of the officer entrusted with
ensuring that public officials do not violate the laws of the State of Texas or
their sworn duties to the citizens of Cameron County prior to making legal
decisions impacting the county. 

 9. The temporary injunction will not dis[-]serve the public interest. In fact,
the Court finds that the public in Cameron County has an interest in Mr.
Villalobos carrying out his duties as County Attorney, duly elected by the
people of Cameron County. 

 10. The status quo is the last peaceable position between the two parties. 
All parties are in agreement that the advice provided by the attorneys under
Mr. Luis Saenz's tenure as County Attorney met the standards of expertise
and acumen required by the Commissioners Court. Therefore, prior to [the]
Commissioners Court['s] action to remove the county civil division from the
Office of the County Attorney to the employment and supervision of the
Commissioners Court[,] the situation reflected harmony between the parties. 

 To illustrate this point, Plaintiff has presented evidence that the
Commissioners Court relocated the County Attorney Civil Division entirely,
keeping the staff and their duties, indicating that [the] Commissioners Court
was happy with the advice they received, since they chose to continue
receiving it after adjusting the location and the budget of the personnel. At
that time[,] Mrs. Yolanda De León had already been elected as successor
Cameron County Attorney. De León did not consent to this transfer, and as
such, the last peaceable time was prior to December 17, 1996[,] when the
positions and budget slots were removed from the supervision of the County
Attorney, where they had resided for at least the last eighty-three years, and
relocated under the [C]ommissioners [C]ourt. It is in the public interest to
maintain the status quo as described above because it maintains the checks
and balances built into the American system of government and gives full
deference to the actions of the Texas legislature in drafting and enacting
article 41.007 of the Government Code[,] which assigns the duty to advise
county and precinct officials to the County Attorney . . . .

 The trial court, therefore, restrained the Cameron County Commissioners Court from
employing or utilizing a permanent legal division or any other permanent legal counsel for
any purpose and ordered the transfer of all positions, personnel, and budgetary slots of the
Cameron County Civil Legal Division to the Cameron County Attorney's Office under the
direction of appellee. The order also set this matter for a docket control conference on
January 26, 2010. 

 In appellate cause number 13-10-00016-CV, appellants timely filed a notice of
accelerated interlocutory appeal addressing the trial court's December 18, 2009 and
December 30, 2009 temporary restraining orders. See Tex. R. App. P. 28.1. Furthermore,
in appellate cause number 13-10-00023-CV, appellants timely filed a notice of accelerated
interlocutory appeal, complaining about the trial court's January 19, 2010 order granting
appellee a temporary injunction and denying appellants' plea to the jurisdiction. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon 2008); see also Tex. R. App. P. 28.1. 

 On January 22, 2010, appellants requested additional findings of fact and
conclusions of law. The record does not reflect that the trial court issued any. Also on
January 22, 2010, appellee filed a "Motion to Affirm the Effect of Temporary Injunction
Pending Appeal," arguing that Texas case law and rules 24.2(a)(3) and (a)(5) of the Texas
Rules of Appellate Procedure prevented appellants from superseding or suspending the
enforcement of the trial court's temporary injunction during the pendency of this appeal. 
See Tex. R. App. P. 24.2(a)(3), (a)(5). After a hearing, appellee's January 22, 2010 motion
was granted. (2) In its order granting appellee's January 22, 2010 motion, the trial court
stated that:

 the Temporary Injunction signed in this cause on January 19, 2010, remains
in full force and effect, and has not been stayed or superseded by the mere
filing of a notice of appeal. FURTHER, this Court in the exercise of its
discretion, ORDERS that the Temporary Injunction shall not be stayed or
superseded during the pendency of the appeal from said Temporary
Injunction.

 On February 10, 2010, appellants filed a petition for writ of mandamus and an
emergency motion, arguing that the trial court's order granting appellee's January 22, 2010
motion is void and that appellants are allowed to supersede the trial court's January 19,
2010 temporary injunction. In their emergency motion, appellants requested this Court to
stay the trial court's temporary injunction order and its order granting appellee's "Motion
to Affirm the Effect of Temporary Injunction Pending Appeal." Also on February 10, 2010,
this Court granted appellants' emergency request for a stay of the trial court's temporary
injunction order and its order granting appellee's motion to affirm. 

II. Appellate Cause Number 13-10-00059-CV--The Mandamus

 By petition for writ of mandamus in appellate cause number 13-10-00059-CV,
appellants contend that the trial court's order granting appellee's motion to affirm the effect
of appellee's temporary injunction pending appeal, which had the effect of denying
appellants the right to supersede the temporary injunction, is void because appellants, as
representatives of a governmental unit, were entitled to supersede the trial court's
temporary injunction order. Appellee asserts that appellants have an adequate remedy at
law--an appeal based on rule 24.4(a) of the Texas Rules of Appellate Procedure--and
that the trial court's order granting appellee's motion to affirm is not void because the trial
court validly exercised its discretion under rule 24.2 of the Texas Rules of Appellate
Procedure in denying appellants the ability to automatically supersede the judgment
pending appeal. See Tex. R. App. P. 24.2, 24.4(a). 

A. Standard of Review

 Mandamus is an extraordinary remedy, which is available only when a trial court has
clearly abused its discretion and the relator lacks an adequate remedy on appeal. See In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding)
(citing Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)); see also In re Team Rocket,
L.P., 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).

 A trial court clearly abuses its discretion when it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law. See In re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding); Walker, 827
S.W.2d at 839. Regarding the resolution of factual issues or matters committed to the trial
court's discretion, we may not substitute our judgment for that of the trial court unless the
relator establishes that the trial court could reasonably have reached only one decision and
that the trial court's decision is arbitrary and unreasonable. See Liberty Nat'l Fire Ins. Co.
v. Akin, 927 S.W.2d 627, 630 (Tex. 1996); Walker, 827 S.W.2d at 839-40. This burden is
a heavy one. See Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex. 1994)
(orig. proceeding).

 Our review is much less deferential with respect to the trial court's determination of
the legal principles supporting its ruling, because a trial court has no discretion in
determining what the law is or in applying the law to the facts. See Walker, 827 S.W.2d
at 840. Therefore, a clear failure by the trial court to analyze or apply the law correctly will
constitute an abuse of discretion and may result in mandamus. See id.

 The second element the relator must satisfy before mandamus relief will issue is
that the relator lacks an adequate remedy at law. See id. at 840, 842. Generally speaking,
an adequate legal remedy exists if the relator is able to raise the issue on appeal. See id.
at 840 (providing that mandamus would issue "only in situations involving manifest and
urgent necessity and not for grievances that may be addressed by other remedies"). 
However, in some extraordinary cases, whether a clear abuse of discretion can be
adequately remedies by appeal depends on a careful analysis of the costs and benefits of
interlocutory review. In re McAllen Med. Ctr., Inc., 275 S.W.3d 458, 462 (Tex. 2008) (orig.
proceeding); see In re Prudential Ins. Co. of Am., 148 S.W.3d at 136 ("An appellate
remedy is 'adequate' when any benefits to mandamus review are outweighed by the
detriments."). (3) 

 An adequate remedy at law does not exist if the rights sought to be protected would
be irretrievably lost or the appellate court would not be able to cure the trial court's error. 
In re Valero Energy Corp., 973 S.W.2d 453, 457 (Tex. App.-Houston [14th Dist.] 1998,
orig. proceeding) (op. on reh'g); see Walker, 827 S.W.2d at 843; see also In re Burlington
Coat Factory Warehouse of McAllen, Inc., 167 S.W.3d 827, 831 (Tex. 2005) (orig.
proceeding) ("There is also no adequate remedy by appeal for allowing execution to issue
before a final judgment has been entered."); In re Tarrant County, 16 S.W.3d 914, 918-19
(Tex. App.-Fort Worth 2000, orig. proceeding) (noting that if a litigant has the right to
supersede an adverse judgment during the pendency of an appeal, then this right will be
lost forever if execution is permitted prior to the entry of a final, appealable judgment). 

 Mandamus will lie to correct a void order, that is, an order the trial court had no
power or jurisdiction to render. In re Sw. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex. 2000)
(orig. proceeding) (per curiam); In re Dickason, 987 S.W.2d 570, 571 (Tex. 1998) (orig.
proceeding). "It is not enough that the order of the court is erroneous; the order of the
court must have been beyond the power of the court to enter." Zep Mfg. Co. v. Anthony,
752 S.W.2d 687, 689 (Tex. App.-Houston [1st Dist.] 1998, orig. proceeding). When the
trial court's order is void, mandamus relief is available regardless of whether there is an
adequate remedy by appeal. Sw. Bell Tel. Co., 35 S.W.3d at 605; In re Vlasak, 141
S.W.3d 233, 235 (Tex. App.-San Antonio 2004, orig. proceeding).

B. Applicable Law

 "A person may appeal from an interlocutory order of a district court . . . that . . .
grants or refuses a temporary injunction or grants or overrules a motion to dissolve a
temporary injunction as provided by Chapter 65." Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(4). Rule 29.1 of the rules of appellate procedure provides that: "[p]erfecting an
appeal from an order granting interlocutory relief does not suspend the order appealed
from unless . . . the appellant is entitled to super[s]ede the order without security by filing
a notice of appeal." Tex. R. App. P. 29.1(b); see id. at R. 25.1(g)(2) (providing that the
enforcement of a judgment is not suspended by appeal unless appellant is entitled to
supersede the judgment without security by filing a notice of appeal). A governmental
entity, such as a County, is exempt from giving supersedeas (4) or a cost bond as security
for court costs on appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 6.001(a), (b)(4)
(Vernon 2002). This exemption also applies to governmental officials, including county
commissioners, for actions taken in their official capacity. See Enriquez v. Hooten, 857
S.W.2d 153, 154 (Tex. App.-El Paso 1993, orig. proceeding) (citing Parker v. White, 815
S.W.2d 893, 895 (Tex. App.-Tyler 1991, orig. proceeding)). 

 In addition, "[a] governmental entity, such as a county, has the right to supersede
the judgment of a trial court rendered against it by merely filing a notice of appeal." In re
Tarrant County, 16 S.W.3d at 918 (citing Tex. Civ. Prac. & Rem. Code Ann. § 6.001(b)(4);
Tex. R. App. P. 25.1(g); In re Long, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding)
(op. on reh'g) (stating that a county official's notice of appeal operates as a supersedeas
bond)). "The right to supersede a judgment is one of absolute right and is not a matter
within the trial court's discretion." Id. (citing Houtchens v. Mercer, 119 Tex. 431, 29 S.W.2d
1031, 1033 (1930) (orig. proceeding); State ex rel. State Highway & Pub. Transp. Comm'n
v. Schless, 815 S.W.2d 373, 375 (Tex. App.-Austin 1991, orig. proceeding [leave
denied])). Moreover, a County official's appeal, when perfected, automatically supersedes
the trial court's judgment, and that suspension remains in effect until all appellate rights are
exhausted. In re Long, 984 S.W.2d at 625 (citing Enriquez, 857 S.W.2d at 154-55); see
Ammex Warehouse Co. v. Archer, 381 S.W.2d 478, 485 (Tex. 1964) (holding that the State
had a valid statutory right to a supersedeas without filing a bond upon perfecting its
appeals from a permanent injunction). 

C. Discussion

 In arguing that the trial court's order granting his motion to affirm is not void and that
the trial court had discretion to deny appellants the right to supersede, appellee relies
heavily on rules 24.2(a)(3) and 24.2(a)(5) of the Texas Rules of Appellate Procedure and
this Court's holding in City of Robstown v. Westergren, 774 S.W.2d 739 (Tex. App.-Corpus
Christi 1989, orig. proceeding). Rules 24.2(a)(3) and 24.2(a)(5) provide as follows:

 24.2 Amount of Bond, Deposit or Security

 (a) Type of Judgment.

 . . . .

 (3) Other Judgment. When the judgment is for something
other than money or an interest in property, the trial court must
set the amount and type of security that the judgment debtor
must post. The security must adequately protect the judgment
creditor against loss or damage that the appeal might cause. 
But the trial court may decline to permit the judgment to be
superseded if the judgment creditor posts security ordered by
the trial court in an amount and type that will secure the
judgment debtor against any loss or damage caused by the
relief granted the judgment creditor if an appellate court
determines, on final disposition, that that relief was improper.

 . . . .

 (5) For a Governmental Entity. When a judgment in favor of a
governmental entity in its governmental capacity is one in
which the entity has no pecuniary interest, the trial court must
determine whether to suspend enforcement, with or without
security, taking into account the harm that is likely to result to
the judgment debtor if enforcement is not suspended, and the
harm that is likely to result to others if enforcement is
suspended. The appellate court may review the trial court's
determination and suspend enforcement of the judgment, with
or without security, or refuse to suspend the judgment. If
security is required, recovery is limited to the governmental
entity's actual damages resulting from suspension of the
judgment.

Tex. R. App. P. 24.2(a)(3), (a)(5).

 In Westergren, this Court stated the following, with respect to a governmental
entity's right to suspend enforcement of a judgment:

 This case . . . is subject to a statutory provision which unequivocally
allows a home-rule city to appeal the judgment without giving supersedeas
bond. However, we view as distinct the right of a municipality to appeal
without giving a supersedeas bond, and the purported automatic right to
supersede a judgment on appeal. It does not follow that because the City
does not have to file a supersedeas bond, that it is automatically entitled to
supersede the judgment. This would destroy the discretion now given the
trial court by Rule 47(f) [now rule 24.2(a)(3)] . . . to disallow supersedeas
when the judgment does not involve money. Here, relators would have been
entitled to supersede the judgment without bond, if the trial court, in its
discretion, had allowed the judgment to be superseded. The trial court did
not allow supersedeas. Relator does not contend that the trial court abused
a discretionary power but that the trial court did not have discretion to
disallow supersedeas. Since we reject relator's contention, we hold that the
Honorable Mike Westergren had the discretionary authority under Rule 47(f)
to deny relator to supersede the injunction, and therefore, notice of appeal
did not operate to automatically supersede the judgment.

Westergren, 774 S.W.2d at 740-41 (emphasis added). In arriving at this conclusion, this
Court relied upon the decisions in Klein Independent School District v. Fourteenth Court
of Appeals, 720 S.W.2d 87, 88 (Tex. 1986) (orig. proceeding) and Hill v. Fourteenth Court
of Appeals, 695 S.W.2d 554, 555 (Tex. 1985) (orig. proceeding), whereby the supreme
court upheld the trial court's discretion to allow a non-monetary judgment to be superseded
under rule 364(f) of the rules of civil procedure (now rule 24.2(a)(3) of the rules of appellate
procedure). 

 However, neither Westergren nor the supreme court cases relied upon in
Westergren involved a party subject to section 6.001 of the civil practice and remedies
code. See Tex. Civ. Prac. & Rem. Code Ann. § 6.001; see also Klein Indep. Sch. Dist., 720
S.W.2d at 88; Hill, 695 S.W.2d at 555; Westergren, 774 S.W.2d at 740-41. In fact,
Westergren involved a different statutory provision relating to home-rule municipalities. 
See Tex. Civ. Prac. & Rem. Code Ann. § 6.002 (Vernon 2002). Furthermore, as the Waco
Court of Appeals stated in Johnson, "[t]he discretion of the trial court [under Texas Rules
of Appellate Procedure 24.2(a)(3) and (a)(5)] would not be destroyed as the Corpus Christi
court [in Westergren] feared because it would remain intact for appealing parties other than
those who are not required to file security to supersede a judgment." City of Fort Worth v.
Johnson, 71 S.W.3d 470, 473 (Tex. App.-Waco 2002, order). 

 Moreover, as noted above, the Texas Supreme Court held in 1999, that a County
official's appeal, when perfected, automatically supersedes the trial court's judgment, and
that suspension remains in effect until all appellate rights are exhausted. In re Long, 984
S.W.2d at 625 (citing Enriquez, 857 S.W.2d at 154-55). The supreme court's holding in
In re Long does not seem to comport with the holding in Westergren because the supreme
court does not reference the trial court's purported discretion in denying supersedeas
under Texas Rules of Appellate Procedure 24.2(a)(3) and (a)(5), even though those
provisions were in effect at the time of the ruling. See id.; see also Tex. R. App. P.
24.2(a)(3), (a)(5); Westergren, 774 S.W.2d at 740-41. Therefore, in light of In re Long, we
question whether the portion of Westergren denying a governmental entity its absolute right
to supersedeas is still good law. In addition, we believe that the Johnson court's analysis
of the Westergren holding is persuasive and demonstrates that Westergren is inapposite
in this matter, especially considering the supreme court's pronouncement in In re Long. 
See In re Long, 984 S.W.2d at 625; see also Johnson, 71 S.W.3d at 473; Westergren, 774
S.W.2d at 740-41.

 Therefore, because the case law is clear that a governmental entity, such as a
County, has the absolute right to supersede a judgment of the trial court by merely filing
a notice of appeal, and because this absolute right extends to governmental officials, we
conclude that the trial court did not have discretion to deny supersedeas of the judgment
against appellants. See In re Long, 984 S.W.2d at 625; Archer, 381 S.W.2d at 485; see
also In re Tarrant County, 16 S.W.3d at 918; Enriquez, 857 S.W.2d at 154. And, even if
we assumed that the trial court did have the discretion to deny appellants supersedeas,
we would nonetheless conclude that the trial court abused its discretion in denying
supersedeas because, as we conclude below, appellee was not entitled to the relief sought
and, therefore, could not have sustained any damage warranting the denial of supersedeas
and because all parties in this case are governmental entities. See Tex. R. App. P.
24.2(a)(3) (providing that "[t]he security must adequately protect the judgment creditor
[appellee here] against loss or damage that the appeal might cause"), (a)(5) (stating that
"the trial court must determine whether to suspend enforcement, with or without security,
taking into account the harm that is likely to result to the judgment debtor [appellants here]
if enforcement is not suspended, and the harm that is likely to result to others if
enforcement is not suspended").

 Therefore, given that appellants have an absolute right to supersedeas, we
conclude that the trial court did not have any power to deny appellants supersedeas. Thus,
the trial court's order granting appellee's January 22, 2010 motion, which essentially
denied appellants the right to supersedeas, constituted a void order, and mandamus will
lie to correct such an order. See In re Sw. Bell Tel. Co., 35 S.W.3d at 605; In re Dickason,
987 S.W.2d at 571; see also In re Vlasak, 141 S.W.3d at 235. Accordingly, we
CONDITIONALLY GRANT the petition for writ of mandamus and hereby direct the trial
court to grant appellants supersedeas during the pendency of this appeal. This writ will
issue only if the trial court fails to comply. We LIFT the stay issued by this Court on
February 10, 2010, and direct the trial court to proceed in accordance with this opinion. 

III. Appellate Cause Number 13-10-00016-CV

 In their first accelerated interlocutory appeal, appellants contend that the trial court
abused its discretion by issuing an ex parte temporary restraining order on December 18,
2009, and by extending the temporary restraining order on December 30, 2009. 
Specifically, appellants argue that: (1) the trial court erred in determining that appellee had
a viable cause of action against appellants; (2) the trial court erred in concluding that
appellee had a probable right to relief and a probable, imminent, and irreparable injury; and
(3) the trial court's orders fail to comply with Texas Rule of Civil Procedure 683 and,
therefore, are void. Appellee responds by arguing that: (1) appellants lack standing to
appeal the temporary restraining order because the orders are not appealable orders and
the orders have expired and, thus, are moot; and (2) the trial court did not abuse its
discretion in granting the temporary restraining orders.

 On February 2, 2010, appellee filed with this Court a motion to dismiss appellate
cause number 13-10-00016-CV, arguing that the temporary restraining order is not an
appealable order and that, because the temporary restraining orders have expired, the
appeal is moot. Appellants countered that: (1) the temporary restraining orders are
appealable orders because they did more than maintain the status quo of the underlying
matter and, therefore, were ostensibly appealable temporary injunctions; and (2) the
dispute is not moot because the "public interest exception" to the mootness doctrine
applies.

A. Applicable Law

 An appellate court lacks jurisdiction to review an interlocutory order unless a statute
specifically authorizes such an appeal. Qwest Commc'ns Corp. v. AT&T Corp., 24 S.W.3d
334, 336 (Tex. 2000). Section 51.014(a)(4) of the civil practice and remedies code
provides that a party may appeal from an interlocutory order of the trial court that "grants
or refuses a temporary injunction." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). 
Section 51.014, however, does not provide for interlocutory appeal of a temporary
restraining order. See id.; In re Office of the AG, 257 S.W.3d 695, 698 (Tex. 2008)
(holding that temporary restraining orders are not appealable; that the Attorney General
had no remedy by appeal; and that mandamus relief was appropriate to address issues
pertaining to a temporary restraining order) (citing In re Newton, 146 S.W.3d 648, 652-53
(Tex. 2004); In re Tex. Natural Res. Conservation Comm'n, 85 S.W.3d 201, 205 (Tex.
2002)).

 The supreme court and other Texas courts have routinely held that whether
jurisdiction is conferred on the court of appeals depends on whether the trial court's order
can properly be characterized as a temporary injunction, meaning we must look to the
substance rather than the title of the order. See Del Valle Indep. Sch. Dist. v. Lopez, 845
S.W.2d 808, 809 (Tex. 1992) (citing Brines v. McIlhaney, 596 S.W.2d 519, 524 (Tex.
1980); Gensco, Inc. v. Thomas, 609 S.W.2d 650, 651 (Tex. Civ. App.-San Antonio 1980,
no writ) ("The true character of an injunction is to be determined by its characteristics and
functions."); Conway v. Irick, 429 S.W.2d 648, 649 (Tex. Civ. App.-Fort Worth 1968, writ
ref'd)); In re Tex. Natural Res. Conservation Comm'n, 85 S.W.3d at 205 ("The fact that the
order is denominated as a temporary restraining order does not control whether the order
is appealable."); see also In re De Villarreal, No. 13-08-00408-CV, 2009 Tex. App. LEXIS,
at **11-12 (Tex. App.-Corpus Christi Apr. 2, 2009, pet. filed) (mem. op.).

 In Brines, the supreme court articulated the distinction between a temporary
restraining order and a temporary injunction:

 A temporary restraining order is one entered as part of a motion for a
temporary injunction, by which a party is restrained pending the hearing of
the motion. A temporary injunction is one which operates until dissolved by
an interlocutory order or until the final hearing.

596 S.W.2d at 523 (citations omitted); see Lopez, 845 S.W.3d at 809; see also In re De
Los Santos, No. 13-01-00549-CV, 2001 Tex. App. LEXIS 6517, at **3-5 (Tex. App.-Corpus
Christi Sept. 20, 2001, orig. proceeding) (holding that the expiration of a temporary
restraining order usually renders its challenge moot and that a temporary restraining
order's purpose is to maintain the status quo between the parties, and if the trial judge
grants affirmative relief in the temporary restraining order which alters the status quo, then
the temporary restraining order resembles a temporary injunction). 

 Orders which direct the conduct of a party but do not contemplate imminent
disposition of a request for a temporary or permanent injunction cannot be categorized as
a non-appealable temporary restraining order. See Lopez, 845 S.W.2d at 809 (citing Tex.
R. Civ. P. 680); see also Global Natural Res. v. Bear, Stearns & Co., 642 S.W.2d 852, 854
(Tex. App.-Dallas 1982, no writ) ("The temporary restraining order [is] tantamount to a
temporary injunction because the effect of it on the parties went beyond protecting the
status quo for a ten-day period."); Plant Process Equip., Inc. v. Harris, 579 S.W.2d 53, 54
(Tex. Civ. App.-Houston [14th Dist.] 1979, no writ) ("The controlling factor is . . . whether
the relief granted does more than preserve the status quo during the ten[-]day span of a
temporary restraining order.").

B. Discussion

 In the instant case, the trial court's ex parte order entered on December 18, 2009,
restrained the Cameron County Civil Legal Division from advising or representing the
Cameron County Commissioners Court. The restraining order also provided the following,
among other things:

 It is therefore ORDERED that a temporary restraining order issue,
effective upon entry of this order until the fourteenth day thereafter unless
otherwise ordered by this Court, to wit:

 . . . .

 Ordering without notice to Defendants the transfer from the Cameron
County Civil Legal Division all positions and budgetary slots to the Cameron
County District Attorney's Office under the direction of Armando Villalobos."

The restraining order also stated that it was effective until January 1, 2010, when the
matter was scheduled for a hearing. Based on our reading of the trial court's December
18, 2009 order, it appears that the trial court ordered that the Cameron County Civil Legal
Division be transferred to the County Attorney's Office, thereby effectuating a change in
the status quo; however, the language of the trial court's order is not entirely clear. 

 In any event, under the mootness doctrine, a justiciable controversy between the
parties must exist at every stage of the legal proceedings, including the appeal. See
United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950); see also In re Kellogg Brown
& Root, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Moreover, the mootness
doctrine limits courts to deciding cases in which an actual controversy exists between the
parties. Fed. Deposit Ins. Corp. v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994). 
Stated otherwise, a case becomes moot, and thus unreviewable, when one seeks to obtain
relief on some alleged controversy when in reality none exists, or on some matter which,
when granted, cannot have any practical legal effect on a then-existing controversy. See
In re Guerra, 235 S.W.3d 392, 433 (Tex. App.-Corpus Christi 2007, orig. proceeding). 

 Texas courts have held that the expiration of an order granting injunctive or
protective relief renders any issue about such an order moot. See In re Salgado, 53
S.W.3d 752, 757 (Tex. App.-El Paso 2001, orig. proceeding) (citing Guajardo v. Alamo
Lumber Co., 159 Tex. 225, 317 S.W.2d 725, 726 (1958); Speed v. Keys, 130 Tex. 276,
109 S.W.2d 967, 967 (1937) (holding that a temporary restraining order which expired by
its own express terms rendered any issue about the order moot); Hermann Hosp. v. Tran,
730 S.W.2d 56, 57 (Tex. App.-Houston [14th Dist.] 1987, no writ) (same)); see also
Faddoul v. Oaxaca, 52 S.W.3d 209, 212 (Tex. App.-El Paso 2001, no pet.) ("A temporary
injunction becomes moot when it becomes inoperative due to a change in status of the
parties or the passage of time, or because it has expired.") (citing Nat'l Collegiate Athletic
Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999); Parr v. Stockwell, 159 Tex. 440, 322 S.W.2d
615, 616 (1959); Tex. Educ. Agency v. Dallas Indep. Sch. Dist., 797 S.W.2d 367, 369 (Tex.
App.-Austin 1990, no writ)). 

 Here, the trial court's December 18, 2009 order set the matter for a hearing on
January 1, 2010, meaning that the injunctive or protective relief was set to expire on
January 1, 2010, which is within the fourteen-day time frame outlined in Texas Rule of Civil
Procedure 680. See Tex. R. Civ. P. 680. In addition, the trial court's December 30, 2009
order provided that the injunctive or protective relief granted expired on January 15, 2010. 
By their express terms, both the December 18, 2009 and December 30, 2009 orders were
expired as of the date of this appeal. Therefore, regardless of whether the trial court's
December 18, 2009 and December 30, 2009 orders constituted a temporary restraining
order or a temporary injunction, we conclude that the issues in this appeal are moot
because the orders have expired. (5) See In re Salgado, 53 S.W.3d at 757; Faddoul, 52
S.W.3d at 86; see also In re Guerra, 235 S.W.3d at 433. Accordingly, we GRANT
appellee's motion to dismiss appellate cause number 13-10-00016-CV. 

IV. Appellate Cause Number 13-10-00023-CV 

 By their sole issue in their second accelerated interlocutory appeal, appellants argue
that the trial court abused its discretion in granting a temporary injunction in favor of
appellee, as it pertains to the Cameron County Civil Legal Division's representation of the
County in civil matters.

A. Standard of Review

 The decision to grant or deny a temporary injunction is within the sound discretion
of the trial court. See Yarto v. Gilliland, 287 S.W.3d 83, 89 (Tex. App.-Corpus Christi
2009, no pet.) (citing Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002)); see
also Freddie Records, Inc. v. Ayala, No. 13-07-00363-CV, 2009 Tex. App. LEXIS 7681, at
**9-10 (Tex. App.-Corpus Christi Sept. 30, 2009, no pet.) (mem. op.). A reviewing court
should reverse an order granting injunctive relief only if the trial court abused its discretion. 
Yarto, 287 S.W.3d at 89. The reviewing court must not substitute its own judgment for the
trial court's unless the trial court's action was so arbitrary that it exceeded the bounds of
reasonable discretion. Id. In reviewing the trial court's order granting injunctive relief, we
are to draw inferences from the evidence in the manner most favorable to the trial court's
ruling. London Mkt. Insurers v. Am. Home Assur. Co., 95 S.W.3d 702, 705 (Tex.
App.-Corpus Christi 2003, no pet.). A trial court does not abuse its discretion when it
bases its decision on conflicting evidence unless the evidence does not reasonably support
the trial court's decision. See Harbor Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 717 (Tex.
App.-Corpus Christi 2001, no pet.). Moreover, on interlocutory appeal of an order granting
injunctive relief, we do not reach the merits of the dispute; instead, we only determine
whether the record supports the trial court's exercise of discretion. See Bank of Tex., N.A.
v. Gaubert, 286 S.W.3d 546, 552 (Tex. App.-Dallas 2009, no pet.); see also Freddie
Records, Inc., 2009 Tex. App. LEXIS 7681, at *10.

B. Applicable Law

 A temporary injunction is an extraordinary remedy that: (1) does not issue as a
matter of right; and (2) may not be granted when there is a plain and adequate remedy at
law. See McGlothlin v. Kliebert, 672 S.W.2d 231, 232 (Tex. 1984); see also Finnegan v.
Mercer, No. 10-09-00250-CV, 2009 Tex. App. LEXIS 9827, at *7 (Tex. App.-Waco Dec.
30, 2009, pet. filed) (mem. op.). The purpose of a temporary injunction is to maintain the
status quo between litigants. Butnaru, 84 S.W.3d at 204. To obtain a temporary
injunction, the applicant must plead and prove the following elements: (1) a cause of
action against the defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim. Id. The party seeking the injunction bears
the burden of proving each of the elements articulated in Butnaru. City of McAllen v.
McAllen Police Officers Union, 221 S.W.3d 885, 893 (Tex. App.-Corpus Christi 2007, pet.
denied); see Butnaru, 84 S.W.3d at 204.

C. Discussion

 1. Appellee's Cause of Action Against Appellants

 On appeal, appellants assert that: (1) declaratory relief was not available to
appellee without express consent by the Commissioners Court or statute; (2) the trial court
erred in exercising its limited supervisory jurisdiction over the Commissioners Court's
decision; and (3) this dispute is barred by res judicata and claim or issue preclusion based
on this Court's holding in Lone Star National Bank. See 107 S.W.3d at 854-55. 

 a. Appellee's Request for Declaratory Relief

 As noted, appellee filed a declaratory judgment action against appellants on
December 17, 2009. In this action, appellee alleged that appellants improperly transferred
the Cameron County Civil Legal Division out of appellee's office in 1996, and that, by
advising the Cameron County Commissioners Court, the Cameron County Civil Legal
Division was usurping appellee's constitutional and statutory duties. In addition, appellee
requested that the trial court: (1) declare the Cameron County Civil Legal Division's
representation of the Cameron County Commissioners Court invalid and unconstitutional;
(2) order the Cameron County Civil Legal Division be placed under the control and
supervision of appellee; and (3) enjoin the Cameron County Civil Legal Division from
advising and representing the Cameron County Commissioners Court. The trial court
concluded, among other things, that appellee was entitled to bring a suit for declaratory or
injunctive relief to determine the scope of his rights and responsibilities as the Cameron
County Attorney. 

 Appellee asserts that he brought this action in his official capacity, not for or on
behalf of the County, under the Act codified at chapter 37 of the civil practice and remedies
code. See Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (Vernon 2008). Suits for
declaratory judgment are intended to determine the rights of parties when a controversy
has arisen, before any wrong actually has been committed. Montemayor v. City of San
Antonio Fire Dep't, 985 S.W.2d 549, 551 (Tex. App.-San Antonio 1998, pet. denied). The
stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity
with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann.
§ 37.002(b). The Act is a remedial statute designed for any "person . . . whose rights,
status, or other legal relations are affected by a statute," and provides a way to "have
determined any question of construction or validity arising under the . . . statute . . . and
obtain a declaration of rights, status, or other legal relations thereunder." Tex. Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); see Tex. Civ. Prac.
& Rem. Code Ann. § 37.002(b); see also Nevins v. Whitley, No. 13-04-486-CV, 2005 Tex.
App. LEXIS 6942, at **14-15 (Tex. App.-Corpus Christi Aug. 25, 2005, no pet.) (mem. op.). 
A declaratory judgment action is neither legal nor equitable, but is sui generis ("of its own
kind"). Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 713 (1945). The Act "is to be
liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b).

 In support of his argument that he may bring suit for declaratory or injunctive relief,
appellee directs us to this Court's decision in City of Robstown v. Barrera, 779 S.W.2d 83,
85 (Tex. App.-Corpus Christi 1989, no writ). The Barrera case involved, among other
things, the review of an order determining that the Board of Trustees of the City of
Robstown's utility system had the power to sue and be sued in its representative capacity
pertaining to the management and control of the city's utility system. Id. at 84. This Court
held that the Board of Trustees had the capacity to bring suit to ascertain their rights and
responsibilities as elected officials and noted the following:

 It is only logical that the Board, created by statute and elected by the
citizenry, should be able to come to the Court for relief to declare its
responsibilities and rights and seek protection of those powers entrusted to
it by the city charter. The fact that the city charter does not specifically give
the Board the power to sue does not preclude the Board from responding
affirmatively to an action brought against it by the City.[ (6)] The Board was not
exercising a "governmental function belonging only to the City" when it chose
to defend the City's suit against it. It simply sought a declaration of the rights
that it has pursuant to the city charter and applicable law as an elected body
of the City of Robstown. The fact that the Board is delegated only
proprietary functions does not prohibit the Board from bringing suit to
determine what those functions entail.

Id. at 85. We believe the situation in Barrera is analogous to the current dispute between
appellants and appellee. As in Barrera, appellee is an elected official who has filed a
declaratory judgment action seeking an order from the district court outlining his rights and
responsibilities, especially regarding the representation of Cameron County in civil matters.

 On the other hand, appellants cite an opinion from the Houston Fourteenth Court
of Appeals to support its argument that appellee has no authority to file suit for or on behalf
of the County without consent of the Commissioners Court or an enabling statute. See
Driscoll v. Harris County Comm'rs Court, 688 S.W.2d 577, 582-83 (Tex. App.-Houston
[14th Dist.] 1984, writ ref'd) (op. on reh'g). (7) In Driscoll, the Harris County Attorney brought
suit against the Harris County Commissioners Court in his official capacity as County
Attorney challenging the authority of the County toll roll authority to employ private counsel. 
Id. at 571. The trial court concluded that the County Attorney had standing to seek
declaratory relief concerning his duties as County Attorney, but found that the County
Attorney: (1) did not have any authority to seek injunctive or declaratory relief regarding
the expenditure of County funds; and (2) lacked the requisite justiciable interest to attack
either the formation of the Harris County Toll Road Authority or the appointment of the
operating board. Id. at 582. Relying on case law stating that the County Attorney does not
have the authority to institute a proceeding for or on behalf of the County unless given the
power by statute or by order of the Commissioners Court, the Driscoll court held:

 His authority [the County Attorney's] being so restricted, it appears to follow,
therefore, that the county attorney in his official capacity would not have the
authority by injunction or declaratory judgment to seek relief against the
expenditure of county funds, as was attempted here. For the same reason,
in his official capacity, we hold that he lacked the requisite justiciable interest
to attack the formation of the Authority or the appointment of the members
of the board.

Id. at 582-83 (citing Looscan v. Harris County, 58 Tex. 511 (1883); Ward County v. King,
454 S.W.2d 239 (Tex. Civ. App.-El Paso 1970, writ dism'd); Wexler v. State, 241 S.W. 231
(Tex. Civ. App.-Galveston 1922, no writ); Duncan v. State, 67 S.W. 903 (Tex. Civ.
App.-Fort Worth 1902, no writ)). 

 We note that the Driscoll opinion is not binding precedent on this Court. In any
event, we find the opinion to be distinguishable from the dispute in this case. Driscoll
states that the County attorney in that case sought to intervene in matters traditionally
vested with the Commissioners Court--i.e., the handling of budgetary matters, the
appointment of public officials, and the creation and arrangement of County offices. See
Comm'rs Court of Titus County v. Agan, 940 S.W.2d 77, 79 (Tex, 1997) (noting that the
duties of the Commissioners Court includes legislative, executive, administrative, and
judicial functions and that the Commissioners Court is the County's principal governing
body) (citing Avery v. Midland County, 390 U.S. 474, 482 (1968); Ector County v. Stringer,
843 S.W.2d 477, 478 (Tex. 1992)); Griffin v. Birkman, 266 S.W.3d 189, 194 (Tex.
App.-Austin 2008, pet. filed) (stating that the Commissioners Court has the power to
manage County business, including the specific statutory duty to oversee the fiscal
operation of the County by approving and authorizing a budget) (citing Tex. Const. art. V,
§ 18; Tex. Loc. Gov't Code Ann. §§ 111.001-.095 (Vernon 2008)); see also Tex. Loc.
Gov't Code Ann. §§ 151.001-.004 (Vernon 2008) (providing that County officials may
employ deputies, assistants, clerks, or other appointed positions only as authorized by the
Commissioners Court). Because the scope of the review in Driscoll pertained to actions
clearly delegated to the Commissioners Court, and the case is not binding on this Court,
we cannot say that the holding in Driscoll is applicable in this matter--a dispute pertaining
to control over the representation of the County in civil matters.

 Therefore, because: (1) the Act is broad in scope and authorizes any person to file
suit in order to clarify their rights and responsibilities; (2) this Court has held that elected
officials have the right to file a declaratory judgment action to clarify the rights and
responsibilities of their elected post; and (3) appellee filed suit in his official capacity and
not on behalf of the County, we conclude that appellee was entitled to file his declaratory
judgment action to clarify his rights and responsibilities as the Cameron County Attorney. 

 b. The Trial Court's Supervisory Jurisdiction Over the Commissioners
Court

 The Texas Constitution vests in the district court "appellate jurisdiction and general
supervisory control over the County Commissioners Court, with such exceptions and under
such regulation as may be prescribed by law." Tex. Const. art. V, § 8; see Griffin, 266
S.W.3d at 195. The enabling statute empowering the district court to exercise such
supervisory control over the Commissioners Court merely repeats the terms of the
constitution. See Tex. Gov't Code Ann. § 24.020 (Vernon 2004). "With very few
exceptions, such as the provision for the appeal of a County Commissioners Court order
creating improvement districts, the legislature has not prescribed any specific manner by
which the district court exercises such supervisory power." Griffin, 266 S.W.3d at 195
(citing Enriquez, 863 S.W.2d at 528). "The lack of legislative direction has left to the courts
the task of defining the scope of the district court's supervisory powers over the actions of
the County Commissioners Court." Id. (citing Enriquez, 863 S.W.2d at 528). 

 When a Commissioners Court acts beyond its authority in performing its legislative
function, the supervisory jurisdiction of the district court comes into play. Enriquez, 863
S.W.2d at 528. Furthermore, a district court may reverse a Commissioners Court's action
only if the latter has acted arbitrarily, capriciously, collusively, fraudulently, or, otherwise,
in abuse of its discretion. See Stringer, 843 S.W.2d at 479; Stovall v. Shivers, 129 Tex.
256, 103 S.W.2d 363, 366 (1937); Hays County v. Hays County Water Planning P'ship,
106 S.W.3d 349, 355 (Tex. App.-Austin 2003, pet. denied); Vondy v. Comm'rs Court of
Uvalde County, 714 S.W.2d 417, 420 (Tex. App.-San Antonio 1986, writ ref'd n.r.e.)
(invoking the district court's jurisdiction by alleging that a Commissioners Court's order is
voidable as being "arbitrary, capricious, unsupported by substantial evidence or that the
court has acted beyond its jurisdiction"). 

 A court may not substitute its judgment and discretion for the judgment and
discretion of the governing body upon whom the law vests the primary power and duty to
act. Stringer, 843 S.W.2d at 459. If the Commissioners Court acts illegally, unreasonably,
or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the
court ends. Id. (citing Lewis v. City of Fort Worth, 126 Tex. 458, 89 S.W.2d 975, 978
(1936)).

 Appellants cite to a litany of cases, arguing that the trial court--the 444th Judicial
District Court--did not have supervisory jurisdiction over the Commissioners Court's
decision to transfer the Cameron County Civil Legal Division from the County Attorney's
Office. See Comm'rs Court of Randall County v. Sherrod, 854 S.W.2d 914, 920 (Tex.
App.-Amarillo 1993, no writ); In re El Paso County Courthouse, 765 S.W.2d 876, 882 (Tex.
App.-El Paso 1989, no writ); Comm'rs Court of Caldwell County v. Criminal Dist. Attorney,
690 S.W.2d 932, 934-35 (Tex. App.-Austin 1985, writ ref'd n.r.e.); Weber v. City of
Sachse, 591 S.W.2d 563, 566 (Tex. Civ. App.-Dallas 1979, writ dism'd); Garcia v. State,
290 S.W.2d 555, 557 (Tex. Civ. App.-San Antonio 1956, writ ref'd n.r.e.). Each of these
cases generally stands for the proposition that the trial court only has supervisory
jurisdiction over Commissioners Court decisions that are arbitrary, capricious, or, in other
words, constitute an abuse of discretion. 

 However, appellee's allegations in this case center on whether the Cameron County
Commissioners Court's decision to transfer the Civil Legal Division from appellee's office
was arbitrary, capricious, and constituted an abuse of discretion. Thus, appellee's
allegations appear to vest supervisory jurisdiction in the trial court to review the
Commissioners Court's decision to transfer the Civil Legal Division from appellee's office. 
While we recognize that Texas courts have held that the Act does not enlarge existing
jurisdiction or create new jurisdiction, see Lund v. Alanis, 381 S.W.2d 955, 956 (Tex. Civ.
App.-San Antonio 1964, writ dism'd) (per curiam); Phillips v. City of Odessa, 287 S.W.2d
518, 520 (Tex. Civ. App.-El Paso 1956, writ ref'd n.r.e.), appellants have not cited any
authority specifically excluding the substance of this matter from the trial court's
supervisory jurisdiction or demonstrating that the district court's exercise of jurisdiction over
this matter was somehow improper. Accordingly, we conclude that appellants' contention
that the trial court does not have supervisory jurisdiction over this matter is unfounded.

 c. Res Judicata

 The doctrine of res judicata, or claim preclusion, bars the re-litigation of claims that
have been finally adjudicated, or that arise out of the same subject matter and that could
have been litigated in the prior action. Barr v. Resolution Trust Corp., 837 S.W.2d 627,
628 (Tex. 1992). Res judicata requires proof of the following elements: (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those
in privity with them; and (3) a second action based on the same claims as were raised or
could have been raised in the first action. Amstadt v. United States Brass Corp., 919
S.W.2d 644, 652 (Tex. 1996). The purpose of the doctrine of res judicata is to bring an
end to litigation, prevent vexatious litigation, maintain the stability of court decisions,
promote judicial economy, and prevent double recovery. See Citizens Ins. Co. v. Daccach,
217 S.W.3d 430, 449 (Tex. 2007) (citing Barr, 837 S.W.2d at 629; Jeanes v. Henderson,
688 S.W.2d 100, 105 (Tex. 1985)). As noted earlier, appellants rely solely on this Court's
decision in Lone Star National Bank to support their res judicata contention. 

 In Lone Star National Bank, this Court analyzed whether the Cameron County
Attorney, one of appellee's predecessors, had standing to intervene in an action brought
by a bank against Cameron County. 107 S.W.3d at 854-55. Specifically, the Cameron
County Attorney argued that she was entitled to intervene in the lawsuit without express
approval of the Commissioners Court under section 41.009 of the government code, which
allows the County Attorney to initiate proceedings against County officials who are
entrusted with the collection or safekeeping of public funds and who neglect or abuse the
trust confided in them. Id.; see Tex. Gov't Code Ann. § 41.009 (Vernon 2004). The
dispute, brought in the form of a declaratory judgment action, centered on whether a
depository contract between the bank and Cameron County was valid and legally binding. 
See Lone Star Nat'l Bank, 107 S.W.3d at 854. This Court concluded that section 41.009
did not authorize the County Attorney to intervene in the suit because the record did not
demonstrate that the Commissioners Court--using the Cameron County Civil Legal
Division to defend against the declaratory judgment action--impinged upon the County
Attorney's statutory duties. Id. at 854-55. 

 While this Court outlined much of the law governing the relationship between the
Commissioners Court and the County Attorney's Office, we do not believe this case
supports appellants' res judicata contention because the Court was specifically asked to
determine the import of section 41.009 of the government code, as it applied to the County
Attorney's right to represent the County in a declaratory judgment action about a depository
contract. See id. It does not appear that the County Attorney argued the applicability of
section 41.007 of the government code or its impact in Lone Star National Bank because
section 41.009 directly applied. See id. Furthermore, we did not specifically hold that the
County Attorney may not represent the County in civil matters, nor did we address the
propriety of the Commissioners Court's employment of a permanent civil legal division, as
neither argument was raised, nor should have been raised in the dispute. See id. 
Therefore, based on the foregoing, we conclude that appellants' res judicata contention
lacks merit. See Amstadt, 919 S.W.2d at 652; see also Barr, 837 S.W.2d at 628.

 In sum, we find that the governing statutory and case law authorized appellee to
bring this action in the trial court to declare his rights and responsibilities as an elected
official of Cameron County.

 2. Probable Right to the Relief Sought

 Next, appellants argue that the trial court arbitrarily and unreasonably applied the
law pertaining to: (1) appellee's constitutional and statutory duties; (2) the Commissioners
Court's authority to govern County business and hire legal counsel; and (3) the
determination of the status quo.

 a. Applicable Law 

 It is undisputed that appellee's proper title is Cameron County Attorney and that
appellee performs the duties of a district attorney. See Tex. Gov't Code Ann. § 46.002(3)
(Vernon Supp. 2009); Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005) (stating the
following with respect to the duties of district attorneys: "Each district attorney shall
represent the State in all criminal cases in the district courts of his district and in appeals
therefrom, except in cases where he has been, before his election, employed adversely");
see also In re Guerra, 235 S.W.3d 392, 407 n.54 (Tex. App.-Corpus Christi 2007, no pet.)
("'The attorney representing the State' means the Attorney General, district attorney,
criminal district attorney, or county attorney.") (citing Tex. Code Crim. Proc. Ann. art. 20.03
(Vernon 2005)). Article V, section 21 of the Texas Constitution further outlines the duties
and responsibilities of a County Attorney in Texas:

 A County Attorney, for counties in which there is not a resident
Criminal District Attorney, shall be elected by the qualified voters of each
county, who shall be commissioned by the Governor, and hold his office for
the term of four years. In case of vacancy[,] the Commissioners Court of the
county shall have the power to appoint a County Attorney until the next
general election. The County Attorneys shall represent the State in all cases
in the District and inferior courts in their respective counties; but if any county
shall be included in a district in which there shall be a District Attorney, the
respective duties of District Attorneys and County Attorneys shall in such
counties be regulated by the Legislature. . . . 

Tex. Const. art. V, § 21 (emphasis added). However, chapter 45 of the civil practice and
remedies code provides that the County Attorneys in several Texas counties have different
vested powers than those described in article V, section 21 of the Texas Constitution. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 45.001-.351 (Vernon 2004 & Supp. 2009). In fact,
the County Attorneys in Fort Bend County, Grimes County, Harris County, Lee County,
Matagorda County, Montgomery County, Oldham County, Swisher County, and Wharton
County are empowered with the exclusive right to represent their respective
Commissioners Courts in civil matters or in all County matters. See id. §§ 45.179, .193,
.201, .244, .261, .270, .280, .319, .341 (Vernon 2004 & Supp. 2009). However, no such
statute applies to Cameron County. See id. § 45.131 (stating that the section is "reserved
for Cameron County" without any additional language outlining further duties imposed on
the Cameron County Attorney).

 The Commissioners Court derives its power from article V, section 18(b) of the
Texas Constitution:

 (b) Each county shall, in the manner provided for justice of the peace and
constable precincts, be divided into four commissioners precincts in each of
which there shall be elected by the qualified voters thereof one County
Commissioner, who shall hold his office for four years and until his successor
shall be elected and qualified. The County Commissioners so chosen, with
the County Judge as presiding officer, shall compose the County
Commissioners Court, which shall exercise such powers and jurisdiction over
all county business, as is conferred by this Constitution and the laws of the
State, or as may be hereafter prescribed.

Tex. Const. art. V, § 18 (emphasis added). 

 The Texas Supreme Court has construed article V, section 18 to mean "that
although a commissioners court may exercise broad discretion in conducting county
business, the legal basis for any action taken must be grounded ultimately in the
constitution or statutes." Guynes v. Galveston County, 861 S.W.2d 861, 863 (Tex. 1993)
(citing Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451, 453 (1948); Renfro v.
Shropshire, 566 S.W.2d 688, 690 (Tex. Civ. App.-Eastland 1978, writ ref'd n.r.e)). 
However, the Guynes court noted that "[a]s the administrative head of county government,
a commissioners court also possesses broad implied powers to accomplish its legitimate
directives." Id. (citing Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333, 334
(1961); Anderson v. Wood, 137 Tex. 201, 152 S.W.2d 1084, 1085 (1941); Galveston
County v. Gresham, 220 S.W.560, 562 (Tex. Civ. App.-Galveston 1920, writ ref'd)). 
"These powers include the authority to contract with experts when necessary, including
attorneys." Id. (citing McKenna, 350 S.W.2d at 334; McClintock & Robertson v. Cottle
County, 127 S.W.2d 319, 321 (Tex. Civ. App.-Amarillo 1939, writ dism'd judgm't cor.)). 

 The Guynes court also stated that:

 Although this court has not specifically addressed the question whether a
commissioners court may employ a permanent legal staff to advise it in its
various civil affairs, the courts of this state have for the last century upheld
the power of a commissioners court to hire counsel to assist it or other
officials in carrying out their responsibilities so long as the statutory duties of
other county officials are not thereby usurped. [See,] [e].g.[,] Terrell v.
Greene, 88 Tex. 539, 31 S.W. 631, 633 (1895); Maud v. Terrell, 109 Tex. 97,
200 S.W. 375, 376 (1918); Seagler v. Adams, 238 S.W. 707, 708 (Tex. Civ.
App.-Galveston 1922), aff'd, 112 Tex. 583, 250 S.W.413 (1923). As long as
the commissioners court does not impinge on the statutory duties of other
officials, it retains the implied power to control litigation and choose its legal
remedies. See Looscan v. Harris County, 58 Tex. 511, 514 (1883); Terrell,
31 S.W. at 633; Travis County v. Matthews, 235 S.W.2d 691, 697 (Tex. Civ.
App.-Austin 1950, writ ref'd n.r.e). Moreover, county and district attorneys
are charged primarily with enforcement of the criminal statutes, Brady v.
Brooks, 99 Tex. 366, 89 S.W. 1052, 1056 (1905), and "it is not one of their
prescribed legal duties to represent the county in its general legal business
or the conduct of ordinary civil actions." Hill Farm, Inc. v. Hill County, 425
S.W.2d 414, 419 (Tex. Civ. App.-Waco 1968), aff'd, 436 S.W.2d 320 (Tex.
1969).

Id. at 863-64; see Lone Star Nat'l Bank, 107 S.W.3d at 855. 

 b. Discussion

 In this appeal, among the issues that we are faced with is the situation referenced
by the supreme court in Guynes--the propriety of the Commissioners Court's decision to
employ permanent legal staff to advise it in civil matters. We also must analyze the
Commissioners Court's 1996 decision to transfer the Civil Legal Division from appellee's
office. Appellee argues that the Commissioners Court's decision to transfer the Civil Legal
Division from his office amounted to an arbitrary and capricious decision because the
decision is not supported by law. Appellee further argues that his office has the exclusive
duty of advising the Commissioners Court on civil matters.

 First, we analyze the Commissioners Court's 1996 decision to transfer the Civil
Legal Division from appellee's office. At the January 15, 2010 hearing, Judge Cascos
admitted that from the creation of Cameron County in the late 1800's until 1996, the
Commissioners Court was represented in civil matters by the County Attorney's Office. 
However, in late 1996, then-Cameron County Attorney Luis Saenz consented to the
transfer of the Civil Legal Division from the County Attorney's Office to the Commissioners
Court, meaning the County Attorney's Office was no longer responsible for representing
the Commissioners Court in civil matters. Judge Cascos testified that he believed the
transfer of power was done out of spite, because certain commissioners were worried
about whether the incoming Cameron County Attorney, Yolanda De León, would effectively
represent the Commissioners Court in civil matters. Judge Cascos did, however, state that
he was unsure about the motives of other commissioners, especially regarding his
allegation that the transfer was done out of spite. 

 Judge Cascos later referenced a letter written by then-Cameron County Judge
Gilberto Hinojosa on February 11, 1997, which was addressed to De León and noted
numerous justifications for the purported transfer of power. In his letter, former County
Judge Hinojosa stated the following:

 We concur that it is in the best interest of our constituents to work together. 
But we believe the action taken by this [c]ommissioners [c]ourt over the last
five years to create a strong civil legal support group for the commissioners
court is in the best interest of our constituents. 

 . . . .

 There was no intent by the [c]ommissioners [c]ourt to demean you or
your position. The intent was and is to maintain a strong civil legal division. 
We support your efforts to perform your primary duty as a County Attorney
with felony responsibility, which is [the] enforcement of the criminal statutes. 
We honored your first request for [a] budget amendment, and authorized the
addition of four attorneys to your staff, two for the misdemeanor section, one
for the juvenile section, and one for second chair felony.

 . . . .

 DUTIES OF RESPECTIVE OFFICES: The respective duties of the
criminal and civil divisions are unchanged subsequent to December 19,
1996, except that the county attorney must provide legal opinion to county
officials when requested, which the civil legal division used to do. The county
attorney may not, by statute and attorney general's opinion, provide
representation to any employee or official, including herself or her employees
unless the commissioners court authorizes such representation. To
authorize representation[,] the alleged act of the official or employee must
have been in the performance of their public duties and the commissioners
court must find that provision of such representation is in the best interest of
the public. If the commissioners directed the [C]ounty [A]ttorney's [O]ffice to
provide representation to an official or employee[,] the commissioners should
provide staff. In the past when there existed a potential for conflict of interest
between the county and the sued employee or official, the commissioners
have hired outside counsel. It would not be a change to continue [to do] so.

(Emphasis in original.) The letter written by former-Cameron County Judge Hinojosa was
in response to a letter sent by De León to the Commissioners Court on January 30, 1997,
wherein she expressly withdrew any consent that former-Cameron County Attorney Saenz
had given for this action and stated that the transfer of power was "an unwarranted and
unconstitutional usurpation of the powers of [the] County Attorney." 

 Regardless of the Commissioners Court's intentions for transferring the Civil Legal
Division from the County Attorney's Office in 1996, appellee has not refuted appellants'
argument that the Commissioners Court is vested with the right to conduct county
business. See Tex. Const. art. V, § 18; see also Guynes, 861 S.W.2d at 863; Canales,
214 S.W.2d at 453; Renfro, 566 S.W.2d at 690. Moreover, appellee has not directed us
to any applicable constitutional or statutory provision that precluded the Commissioners
Court from transferring the Civil Legal Division from the County Attorney's Office. Instead,
appellee argues that the Commissioners Court's decision to transfer the Civil Legal Division
was not supported by any law whatsoever. However, Texas courts have routinely held that
the Commissioners Court not only has the power to conduct all County business, but it also
has the power over budgetary matters involving the County. See Tex. Const. art. V, § 18;
Guynes, 861 S.W.2d at 863; Canales, 214 S.W.2d at 453; Renfro, 566 S.W.2d at 690; see
also Hooten, 863 S.W.2d at 528 (providing that the Commissioners Court is empowered
to create the budget for the County's offices and department); Comm'rs Court of Caldwell
County, 690 S.W.2d at 935 (stating that the Commissioners Court is imbued with broad
discretion over budgetary decisions in executing its duties to manage the County's budget).

 Arguably, the alignment of the Civil Legal Division under the Commissioners Court
or the County Attorney's Office involves the conducting of County business, and perhaps
more importantly, the managing of County budgetary matters. Based on our review of the
governing statutes and case law, it is apparent that appellee's office never had the
exclusive right to represent Cameron County in civil matters in the first place. Thus, it is
irrelevant to our analysis that the Commissioners Court acquiesced to the County
Attorney's Office representing the County in civil matters for more than a hundred years. 
Therefore, because appellee has not directed us to any constitutional or statutory provision
precluding the Commissioners Court from transferring the Civil Legal Division from
appellee's office, and because the Commissioners Court is vested with the right to govern
County business and the County's budget, we cannot conclude that the Commissioner
Court's transfer of the Civil Legal Division from appellee's office constituted an arbitrary
and capricious decision or an abuse of discretion.

 Nevertheless, appellee argues that section 41.007 of the government code provides
that the County Attorney's Office is the representative of the County in civil matters, and,
thus, the Commissioners Court usurped appellee's duty to advise and represent the
County in civil matters. Section 41.007 provides as follows: "A district or county attorney,
on request, shall give to a county or precinct official of his district or county a written
opinion or written advice relating to the official duties of that official." Tex. Gov't Code Ann.
§ 41.007 (Vernon 2004) (emphasis added). To properly analyze appellee's contention
regarding section 41.007, we must resort to the rules of statutory interpretation.

 Matters of statutory interpretation are questions of law, over which we exercise de
novo review. Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). The
primary rule of statutory interpretation is that a court must look to the intent of the
Legislature and must construe the statute so as to give effect to that intent. Lee-Hickman's
Invs. v. Alpha Invesco Corp., 139 S.W.3d 698, 700 (Tex. App.-Corpus Christi 2004, no
pet.) (per curiam) (citing City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex.
App.-Austin 1998, no pet.)). It is a rule of statutory construction that every word of a
statute must be presumed to have been used for a purpose, and each sentence, clause,
and word is to be given effect if reasonable and possible. See Tex. Workers'
Compensation Ins. Fund v. Del Indus., Inc., 35 S.W.3d 591, 593 (Tex. 2000) (citing Perkins
v. State, 367 S.W.2d 140, 146 (Tex. 1963)); see also Cameron v. Terrell & Grant, Inc., 618
S.W.2d 535, 540 (Tex. 1981). Likewise, every word excluded from a statute must also be
presumed to have been excluded for a purpose. See Cameron, 618 S.W.2d at 540. In
addition, we do not view disputed portions of a statute in isolation. Id. (citing
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994)). We are to
discern legislative intent from the plain meaning of the words of the statute. See Alpha
Invesco Corp., 139 S.W.3d at 700 (citing L.S. Ranch, Ltd., 970 S.W.2d at 752).

 In reviewing the plain language of the statute, we find that the inclusion of the words
"on request" in section 41.007 connotes that the Commissioners Court retains the option
of utilizing the County Attorney's Office to represent the County in civil matters, and we do
not believe that the language included in section 41.007 creates a mandatory duty for the
Commissioners Court to utilize the County Attorney's Office to represent the county in civil
matters. See id. This construction of section 41.007 is supported by the supreme court's
jurisprudence regarding the County Commissioners Court's power to hire counsel to assist
it or other officials in carrying out their responsibilities so long as the statutory duties of
other County officials are not thereby usurped, and the County Commissioners Court's
implied power to control litigation and choose its legal remedies. (8) See Guynes, 861
S.W.2d at 863-64. If the Commissioners Court was required to use the County Attorney's
Office for representation in civil matters, it would seem that the Commissioners Court's
power to retain counsel for assistance and its power to control litigation and its legal
remedies would be abrogated. See id. 

 Moreover, we find that the legislature's use of the word "shall" in section 41.007
imposes a mandatory duty on the County Attorney's Office to provide written advice to
County officials only if asked or requested by a County official. See Tex. Gov't Code Ann.
§ 41.007; see also Tex. Gov't Code Ann. § 311.016 (Vernon 2005); Barshop v. Medina
County Underground Water Conservation Dist., 925 S.W.2d 618, 629 (Tex. 1996) (holding
that usage of the word "shall" in a statute generally imposes a mandatory duty; however,
the word may be directory when this interpretation is most consistent with the legislature's
intent). It does not appear that the converse is true--that County officials are required to
request written advice solely from the County Attorney's Office. See Tex. Gov't Code Ann.
§ 41.007. Additionally, nowhere in section 41.007 does the Legislature explicitly state that
the County Attorney is required to represent the Commissioners Court in civil matters when
the Commissioners Court has not consented or requested such representation. See id. 
Moreover, appellee does not assert any other constitutional or statutory basis for his
usurpation contention.

 Therefore, based on the foregoing, we conclude that the trial court's conclusion that
appellee demonstrated a probable right to recovery on a trial on the merits is erroneous. 
As such, appellee has not satisfied the essential elements for a temporary injunction. See
Butnaru, 84 S.W.3d at 204; see also McAllen Police Officers Union, 221 S.W.3d at 893. 
Because appellee failed to satisfy the essential elements for a temporary injunction, we
further conclude that the trial court abused its discretion in issuing a temporary injunction
in favor of appellee. See Butnaru, 84 S.W.3d at 204; Yarto, 287 S.W.3d at 89; see also
Ayala, 2009 Tex. App. LEXIS 7681, at **9-10. Accordingly, we sustain appellants' sole
issue on appeal in appellate cause number 13-10-00023-CV. 

IV. Conclusion

 In sum, we conditionally grant the writ requested by appellants in appellate cause
number 13-10-00059-CV, and we grant appellee's motion to dismiss in appellate cause
number 13-10-00016-CV. In appellate cause number 13-10-00023-CV, we dissolve the
temporary injunction, reverse the trial court's judgment, and remand for proceedings
consistent with this opinion. 

 ROGELIO VALDEZ

 Chief Justice 


Delivered and filed the

15th day of July, 2010. 
1. In appellate cause number 13-10-00023-CV, we have received an amicus curiae brief in support
of appellants filed by the Texas Conference of Urban Counties, a non-profit organization that is purportedly
composed of various member counties that comprise nearly 80% of the population of the State of Texas.
2. In their emergency motion, appellants assert that the trial court conducted a hearing on appellee's
January 22, 2010 motion on February 4, 2010; however, the record does not contain a copy of the transcript
from that hearing.
3. According to the Texas Supreme Court,


 [m]andamus review of significant rulings in exceptional cases may be essential to preserve
important substantive and procedural rights from impairment or loss, allow the appellate
courts to give needed and helpful direction to the law that would otherwise prove elusive in
appeals from final judgments, and spare private parties and the public the time and money
utterly wasted enduring eventual reversal of improperly conducted proceedings.


In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).
4. "Supersedeas preserves the status quo of the matters in litigation as they existed before the
issuance of the order or judgment from which an appeal is taken." City of Fort Worth v. Johnson, 71 S.W.3d
470, 472 (Tex. App.-Waco 2002, order) (citing In re Tarrant County, 16 S.W.3d 914, 918 (Tex. App.-Fort
Worth 2000, orig. proceeding)). 
5. In their response to appellee's motion to dismiss appellate cause number 13-10-00016-CV,
appellants urge us to apply the "public interest" exception to the mootness doctrine because "[t]his is an issue
of considerable public importance and the issue is capable of repetition between either the same parties or
other members of the public." Appellants' Response to Appellee's Motion to Dismiss, at p. 10 (quoting In
re Guerra, 235 S.W.3d 392, 433 (Tex. App.-Corpus Christi 2007, no pet.)). However, we decline to apply this
exception to these circumstances because we address the propriety of the injunctive relief granted in favor
of appellee in appellate cause number 13-10-00023-CV. 
6. In Barrera, the City first filed suit for injunctive relief against the Board of Trustees, individually and
in their official capacities, alleging "that the Board members were misapplying and spending public funds in
contravention of the City's charter, ordinances, statutes, as well as the State and Federal Constitutions." City
of Robstown v. Barrera, 779 S.W.2d 83, 84 (Tex. App.-Corpus Christi 1989, no writ). In response to the City's
suit for injunctive relief, the Board counterclaimed, seeking, among other things, "a declaration that it had
authority to institute and maintain a suit . . . ." Id.
7. In their appellate brief, appellants cite us to a version of the Driscoll opinion that was withdrawn, see
Driscoll v. Harris County Comm'rs Court, 688 S.W.2d 569 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd),
opinion withdrawn and substituted, 688 S.W.2d 577 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd); however,
we believe that they intended to reference the substituted opinion on rehearing. See Driscoll, 688 S.W.2d at
577. 
8. Though not binding on this Court, see Comm'rs Court of Titus County v. Agan, 940 S.W.2d 77, 82
(Tex. 1997), several recent opinions from the Attorney General's Office have addressed similar issues as the
one in dispute and endorsed the Commissioners Court's power to direct County business and to employ legal
counsel to advise and represent the County in civil matters. See Op. Tex. Att'y Gen. No. GA-0153, 2004 Tex.
AG LEXIS, at *14, *22 (Feb. 19, 2004) (concluding that the Fannin County Commissioners Court may employ
a private attorney as a salaried or hourly employee to provide the Commissioners Court with legal advice, and
this can be done without the consent of the County Attorney provided that the actions do not usurp
constitutional or statutory duties vested in the County Attorney's Office); see also Op. Tex. Att'y Gen. No. GA-0714, 2009 Tex. AG LEXIS 29, at *12 (May 12, 2009) ("Code of Criminal Procedure article 103.0031, which
authorizes the Commissioners Court of a County to enter into a contract with a private attorney or a public or
private vendor for the provision of collection services [in cases where a defendant fails to pay fines, fees,
costs, forfeited bonds, or restitution], does not violate article V, section 21 of the Texas Constitution by
depriving the criminal district attorney of the authority to prosecute suits by the state."); Op. Tex. Att'y Gen.
No. GA-0545, 2007 Tex. AG LEXIS 49, at *10 (May 4, 2007) (concluding that the "County Attorney of
Henderson County has no exclusive duty to represent Henderson County in all civil legal matters. Thus, the
County Auditor's retention of outside legal counsel did not improperly impinge on an exclusive duty of the
County Attorney"); Op. Tex. Att'y Gen. No. GA-0507, 2007 Tex. AG LEXIS 14, at **16-17 (Jan. 30, 2007)
(stating that a County Attorney is not authorized to serve as legal counsel to the Texas Department of Aging
and Disability Services, absent its request, in the initiation and prosecution of an application for place of a
person with mental retardation, a civil matter under section 593.041 of the health and safety code).